No. 43,146

GLEASON C. GREGORY, *Appellant,* v. ROBERT P. HARRISON and PAULINE GILL HARRISON, Partners doing business as THE M. R. GILL REAL ESTATE AGENCY, and H. C. MURPHREE, *Appellees.*

(382 P. 2d 470)

Opinion filed June 8, 1963.

*Eugene C. Riling* and *William B. Pendleton,* both of Lawrence, argued the cause and were on the briefs for the appellant.

*James W. Paddock,* of Lawrence, argued the cause, and *George K. Melvin* and *Charles D. Stough,* both of Lawrence, were with him on the briefs for the appellees.

The opinion of the court was delivered by

JACKSON, J.: Plaintiff-appellant filed a petition containing three causes of action, each based upon an oral contract made with the defendant-appellees. Each contract was for services performed by plaintiff as an architect. It was alleged that at all times hereinafter mentioned, the defendants, Robert P. Harrison and Pauline Gill Harrison, were and still are partners doing business under the firm name of M. R. Gill Real Estate Agency, with their principal office in Lawrence, Kansas. That at all times hereinafter mentioned, and to which reference is herein made, the defendant, H. C. Murphree, was the duly appointed, qualified and acting agent of the said Robert P. Harrison and Pauline Gill Harrison, doing business as the M. R. Gill Real Agency, with full power to represent and bind them in relation to the making of the agreements set out and hereinafter mentioned.

The first cause of action was based upon an oral contract made by H. C. Murphree as the agent of the M. R. Gill Real Estate Agency, in which it was alleged that Murphree on May 6, 1959, told plaintiff that the Real Estate Agency had the exclusive agency for Schwartz Acres No. 2, an addition to Lawrence, Kansas; that Murphree ordered from plaintiff five house plans with elevations and alternate elevations for each of the plans. Murphree represented to plaintiff that there were 52 lots in the addition, that it was proposed the Agency would sell a house for each of these 52 lots; that only people who would use one of the house plans would be allowed to purchase a lot; that they would sell the lots only to individuals and would not deal with other real estate agencies or contractors; that Murphree agreed to pay plaintiff $100 for each plan used and sold, and that the total compensation for plaintiff would amount to $5,200. That plaintiff furnished the plans and alternate elevations to the defendants, but that sometime after August 24, 1959, the defendants breached the oral contract by selling lots in the addition in violation of the terms set out in the oral contract. That because of this breach plaintiff has not been able to receive the compensation expected. That plaintiff has made demand on defendants for the money due under the oral contract; that only $300 of the sum due was paid to plaintiff

on or about September 1, 1960, leaving a balance due and owing in the amount of $4,900, which defendants refuse to pay.

The second cause of action was based upon an oral contract in which a Mr. and Mrs. Alvord desired plans to build a house on a lot on which they had an option. Murphree arranged with plaintiff to furnish a complete set of architectural plans for the sum of $500. Three sets of plans were drawn and turned over to Murphree. Plaintiff had several talks with the Alvords. The plans were completed on or about June 16, 1959, which was only a short time before the death of Alvord. Murphree and Harrison refused to pay the plaintiff the agreed price for the plans.

In the third cause of action it was alleged that on or about July 9, 1959, Murphree told plaintiff that he, Murphree, had a client who wanted to build a fourplex apartment house; that Murphree, as the agent of the Gill Real Estate Agency, promised plaintiff that if he would prepare all plans and drawings for such apartment house, he would pay him the sum of $600; and that plaintiff agreed to make the plans and drawings and did prepare all preliminary studies, all working drawings and specifications, and all such scale and full size drawings necessary for a contractor to use in making the apartment house. That plaintiff completed all of his work on the contract on or about July 28, 1959, by working steadily on the project, but that neither Murphree nor the Gill Agency has paid the consideration promised to plaintiff.

Early in the trial, the plaintiff testified that he had met Bob Harrison first in 1958 before he met Murphree; that Harrison ordered a house plan to be drawn, and when it was delivered, he immediately paid $100 for it.

In the early part of the year 1959, Murphree began to talk about the Schwartz Addition. Murphree said they needed five plans of five different houses and plaintiff agreed to make the five plans with alternate elevations so that a contractor could use the plans; and that he delivered the plans with the proper elevations needed. Plaintiff agreed to check any houses where he was needed to do so. However, as plaintiff understood the deal, there were 52 lots which Murphree desired to use for these plans. Murphree said he would not sell to anyone who was not interested in using one of the house plans.

The plaintiff's testimony established the oral contract as to Schwartz Acres in accordance with the allegations in the petition.

He testified that contrary to the terms of the oral contract the defendants had been selling lots to the other contractors and to individuals who were allowed to construct homes thereon without using the architectural plans prepared by the plaintiff. He said that the five house plans, one of which had been revised, were finally completed after three months' work in August, 1959, and delivered to the defendants; that Murphree said they were short of cash at that time, and since they did not make any payment he took four of the plans back with him.

The trial court, in commenting after the demurrer to the plaintiff's evidence, said:

". . . I think there is sufficient evidence to go to the jury on plaintiff's theory of oral contract on the first cause of action if there was any deal on which the Court could inform a jury on what the measurement of damages are. If you want to talk about that I will hear you. He has claimed a contract and has established it in a prima facie case. . . ."

The court, nevertheless, after hearing arguments sustained the demurrer to the first cause of action.

The court is of the opinion that here the trial court erred; that Murphree and Harrison failed to carry out their contract and that plaintiff had shown sufficient evidence to warrant the case going to the jury on a breach of contract theory under proper instructions.

As to the second cause of action, the jury held for the defendants. On appeal objection is made by the plaintiff to the introduction of certain evidence. The plaintiff completed three sets of plans for the Alvord home which he turned over the Murphree, and Murphree gave the plans to the Alvords. The plans were ordered by Murphree for the Alvords and Murphree received a retainer fee on the Alvord project using the plans prepared.

The basic issue in the plaintiff's second cause of action, in regard to the plans for the Alvords, was whether or not a contract had been established. The question whether or not the plaintiff later sold his house to Mrs. Alvord after the death of her husband is immaterial and not relevant to that issue, and the evidence admitted by the trial court relative to the plaintiff's sale of his home to Mrs. Alvord five months after he had completed the plans, which he turned over to Murphree, is immaterial and not relevent to the issue in the second cause of action. The admission of such evidence had a definite prejudicial effect on the jury. It is quite apparent that whether the plaintiff sold his house to Mrs. Alvord

had absolutely no bearing on the original contract in regard to drawing plans for Mr. and Mrs. Alvord, as requested by the defendants. This necessitates a reversal on the second cause of action.

The jury found for the plaintiff on the third cause of action, which dealt with the fourplex apartment house. Plaintiff, as appellant, has no fault with that part of jury's verdict and has not appealed from the judgment of the trial court on this cause of action. Inasmuch as the appellees have virtually abandoned their cross appeal on the third cause of action, the judgment of $600 as to this cause of action stands unchallenged.

The appellees have filed a motion to dismiss the matter of the demurrer being sustained to the first cause of action on the theory that the order was a final, appealable order and would not be delayed until the final judgment in the case. In this argument the appellees are in error. (See, G. S. 1961 Supp., 60-3314a, and *Walton v. Walton*, 170 Kan. 13, 223 P. 2d 997, and other cases cited under annotations of the statute.)

To sum up the matter, we are holding that the trial court must be reversed as to the ruling on the demurrer in the first cause of action; also, the court is reversed as to the second cause of action in allowing admission of the evidence of the sale of plaintiff's house to Mrs. Alvord.

The judgment to the lower court is therefore reversed with directions to grant a new trial on the first and second causes of action.

JACKSON, J., dissenting: Although it fell to me to write the foregoing opinion, I feel that I must dissent. In the first cause of action, the plaintiff was not to have anything due him until the lots were sold and the plan for the house agreed upon. Moreover, it should be noted that the three houses that were sold were all from the old plan which plaintiff had redone and which he seems to have delivered to Murphree. Plaintiff's evidence does not show that he finally delivered the four new plans for houses to Murphree and it would seem that the trial court was correct in holding the plaintiff himself had rescinded the contract and that he must recover on *quantum meruit*. It is true that plaintiff did have some evidence introduced as to the first cause of action in a letter he had written in which he offered to take $975 for his work on the

plans made in the first cause of action. But plaintiff did not offer this matter as a sample of *quantum meruit* and I would affirm the trial court as to the demurrer on the first cause of action.

In the second cause of action, I think the trial court was correct in allowing the evidence of the sale of plaintiff's house to be admitted. Mr. Alvord had been dead only a short time when plaintiff made his sale to Mrs. Alvord. Mr. Alvord died around the first part of July, 1959; plaintiff's deal with Mrs. Alvord was of the date November 2 of the same year.

Plaintiff's counsel state that they tried to introduce evidence to explain the sale and that the trial court refused to allow any more evidence upon the point. Therefore, I have some doubt as to the correctness of the court's orders upon the second cause of action. I would tend to affirm the case also as to the second cause of action.